IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

HOVANES BLIKIAN,

    Petitioner,

vs. : CIVIL ACTION NO.: CV210-013

ANTHONY HAYNES, Warden,

    Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Hovanes Blikian ("Blikian"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Response; Blikian filed a Traverse. Blikian alleges that the Bureau of Prisons ("BOP") denied his due process rights during a disciplinary hearing, in which he was found to have violated Code 297 (use of telephone for abuses other than criminal). Blikian alleges: 1) that the Disciplinary Hearing Officer ("DHO") did not provide him with a copy of the decision and disposition of his hearing within ten days; 2) that the DHO developed the telephone regulations that Blikian was accused of violating, and thus denied Blikian the right to an impartial hearing; and 3) that the DHO failed to prove the charge against Blikian. Blikian requests the reinstatement of twenty-seven days of good conduct time, which were deducted for this offense. Respondent asserts that all due process guarantees in the

disciplinary context were satisfied, and that the DHO was impartial. For the reasons which follow, Blikian's petition should be **DENIED**.

## DISCUSSION AND CITATION TO AUTHORITY

A petitioner states a cognizable claim for the deprivation of his procedural due process rights where he alleges the deprivation of "life, liberty, or property." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); U.S. Const. Amend. XIV, § 1 (providing, in pertinent part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."). The deprivation of good time credit clearly implicates a liberty interest. Wolff, 418 U.S. at 558 (holding that a prisoner's liberty must be protected even where, as is the case with good conduct time, the liberty interest itself is a statutory creation of the state).

Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) advance, written notice of the charges against him; (2) a written statement of the facts and evidence relied on and the reason for any disciplinary action taken; (3) the opportunity to call witnesses and present documentary evidence; and (4) an impartial hearing board. Id. at 563-67. In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board is necessary to satisfy the requirements of due process. Superintendent, Mass. Corr. Inst. v. Hill 472 U.S. 445, 455 (1985). The determination of whether this standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

The DHO made the following findings:

It is the decision of the DHO that [Blikian] committed the prohibited act of code 297, use of the telephone for abuses other than criminal (high category offense). This decision is based on the statement of the reporting staff member. Case Manager D. Newbould stated that . . . he monitored a call make by [Blikian]. He stated while monitoring the call, he heard a voice in the background telling [Blikian] what to say to the person who received this telephone call. He stated the voice told [Blikian] to tell the receiving party "he loved them very much. . . ." Mr. Newbould stated when he reviewed the telephone number called, [ ] and with the assistance of the ITS department, he found the same telephone number was on inmate Harris Cohen's authorized calling list. Mr. Newbould stated when he continued monitoring this call he could hear the voice in the background again and again. He stated he was able to identify the voice as Harris Cohen's voice, and stated he knows his voice from numerous conversations during program reviews and day to day verbal interactions with him as his Case Manager. Mr. Newbould stated Cohen was communicating with persons on his authorized telephone calling list by telling [Blikian] what to say during [the] call, and that Cohen could be overheard in the background. He stated that [Blikian] confirmed to the party called that his father was standing right next to him. He stated, throughout the conversation [Blikian] relayed messages between Cohen and the person called. He stated the called party asked, "How is the big guy," and he stated [Blikian] responded, "Good, he is here." He stated the called party said, "When can I hear from you guys again?" He stated [Blikian] responded, "Tomorrow, hear from us." Mr. Newbould stated Cohen was heard telling the receiving party to stay on Jason. Mr. Newbould stated inmate Cohen was currently serving a Unit Discipline Committee imposed sanction of thirty (30) days loss of telephone privilege when this call occurred.

Supporting this decision is a TRUFONE Monitor Recorded Calls report, dated 05-12-2009. This reveals the call reported by Mr. Newbould was made on [Blikian's account], on the time and dated [sic] stated.

The DHO considered [Blikian's] statement that [he was] not the person on a restriction, that [Blikian] did relay a message for Cohen, that [Blikian] felt [he] did not do anything wrong, that Cohen was sitting at the domino table while [Blikian] was calling [Cohen's] daughter, that Cohen yelled for [Blikian] to tell his family he loved them, and [Blikian] did not let Cohen talk on the telephone during [his] call. However, it was found that [Blikian] did circumvent the telephone monitoring system by [his] actions. It is true this was not a 3-way call, or third party connection, but this was seen as a circumvention of the telephone monitoring system.

> In this case, when [Blikian] actively transferred information for inmate Cohen to the person [he] called . . . it amounted to Cohen talking during his call even though he may not have gotten on the telephone. The monitoring system is unable to identify Cohen, and is only able to identify the account or inmate placing the call. If criminal activity had been taking place, the proper law enforcement information could not have been gained by staff. [Blikian] actively passed information from inmate Cohen to the party [Blikian] called, and did it while not going through the proper procedures. If Cohen needed to talk to this person [Blikian] called, he should have done it through the mean he had available. Since he was on a loss of telephone sanction at the time, it would obviously be other than the use of the telephone.
>
> Even with all [Blikian's] explanations and reasoning for [his] actions, this hearing officer did note that Mr. Newbould seemed to shows [sic] [Blikian's] actions were much more involved than [Blikian] and Cohen claim. Mr. Newbould clearly indicates he was able to discern Cohen's voice during the call, and his observation was that [Blikian was] intentionally and actively passing information to the person [he] called for Cohen . . . apparently [he] did not hear the distance [Blikian] claimed [he] had from Cohen during this call. The clear and detailed description by Mr. Newbould caused this hearing officer to be doubtful of the statements . . . .
>
> Cohen['s description] was found consistent with [Blikian's] version of this incident, and even if he were fully believed, it is clear [Blikian] still allowed [Cohen] to pass information through [Blikian], to the person [[Blikian]] called, while [Blikian was] connected with them. However, as stated above, this hearing officer found the clear and descriptive statement of Mr. Newbould cast doubt on the veracity of both [Cohen and Blikian]. It was felt [Cohen and Blikian's] statements were contrived in concert, in an attempt to minimize [Blikian's] actions, and avoid the consequences of [those] actions.
>
> . . . .
>
> This circumvention of the monitoring system warrants the finding that [Blikian] committed an unauthorized use of the telephone in the high category offense level. Accordingly, it is the finding of the DHO that [he] committed the prohibited act as charged.

(Doc. No. 1, pp. 25-26).

Blikian asserts that the hearing and the decision of the DHO were both improperly delayed. All that is required to satisfy due process in disciplinary hearings is that the petitioner have advance written notice of the charges against him. Wolff, 418

U.S. at 563. Blikian does not assert that he was not given advance notice of the charges against him. Therefore, due process is satisfied with respect to this issue.

Blikian asserts that the DHO lacked impartiality in his proceeding because he assisted in writing the language of the prohibited act Blikian was found to have violated. BOP regulations require that, "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16. Though Blikian asserts that the DHO constructed some of the language of Code 297, this tangential involvement in Blikian's proceedings does not rise to the level necessary to constitute a lack of impartiality. See Rhodes v. Robinson, 612 F.2d 766 (3d Cir. 1979) (only officials who have a direct personal or otherwise substantial involvement in the circumstances of the charge are prohibited from sitting on a disciplinary body).

Finally, Blikian asserts that the evidence presented against him should not have led the DHO to the conclusion that he committed the charged offense. The Due Process clause is satisfied if there is "some evidence" to show that the inmate committed the offense. There is "some evidence" in the record to support the DHO's findings. The DHO was presented with an incident report prepared by a BOP staff member who had discovered that Blikian was bypassing the telephone procedures by transmitting inmate Cohen's messages to another party. The DHO found that the number Blikian was calling was on inmate Cohen's call list and that inmate Cohen had lost his phone privileges due to disciplinary sanctions. The DHO considered both Blikian's and Cohen's description of the events and noted that, even taking their version

of events as true, "[I]t is clear [Blikian] still allowed [Cohen] to pass information through [Blikian], to the person [Blikian] called, while [Blikian was] connected with them." It is not the role of this Court to determine the propriety of the evidence, only that there is some evidence in the record to support the findings of the DHO. See Hill, 472 U.S. at 455. Blikian's due process rights were not violated regarding the disciplinary sanctions and the hearing he received.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Blikian's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 30th day of July, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE